UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 14-197-DLB

REGINA G. LOCKARD                                                                    PLAINTIFF

vs.                      MEMORANDUM OPINION & ORDER

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                  DEFENDANT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will **affirm** the Commissioner's decision, as it supported by substantial evidence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Regina Lockard applied for disability insurance benefits (DIB) and supplemental social security benefits (SSI) on September 14, 2011, alleging disability beginning on December 31, 2009. (Tr. 72). Plaintiff was forty-eight (48) years old at the time of filing. (Tr. 72). Specifically, Plaintiff alleges that she is unable to work due to permanent damage to a nerve in her lower back and leg, bipolar disorder, manic-depressive disorder, paranoid tendencies, torn rotator cuff, and back surgery. (Tr. 236).

Plaintiff's application was denied initially and again on reconsideration. (Tr. 72-101; 104-135). At Plaintiff's request, an administrative hearing was conducted on May 6, 2013

before Administrative Law Judge (ALJ) Ena Weathers. (Tr. 38-71). On June 28, 2013, ALJ Weathers ruled that Plaintiff was not entitled to DIB or SSI benefits (Tr. 16-37). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 28, 2014. (Tr. 2-4).

Plaintiff filed the instant action on November 21, 2014. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 10, 11).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.

*Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)**.**

**B.     The ALJ's Determination**

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2009, the alleged onset date. (Tr. 18). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: major depression with psychosis, personality disorder, borderline intellectual functioning, and tobacco-abuse disorder resulting in chronic-obstructive pulmonary disease. (Tr. 19). At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 21).

At Step Four, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> "She cannot climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch or crawl. She can perform simple, routine, non-tandem tasks without strict production demands. She can have occasional interaction with supervisors and occasional to superficial interaction with co-workers and the general public. She can occasionally push and pull with right lower extremity. She can perform no overhead reaching with the right upper extremity. She must avoid all concentrated exposure to extreme heat and cold, fumes, odors, gases, and environmental irritants. She must have the ability to change from standing to a seated position on occasion for one to two minutes at the workstation without interference with work product."

(Tr. 24). Based upon this RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as a housekeeper and country club cleaner. (Tr. 19).

The ALJ also alternatively held that Plaintiff was incapable of performing her past relevant work, but nevertheless, based on the testimony of a vocational expert (VE) and Plaintiff's characteristics, found that there were a significant number of jobs in the region which Plaintiff could perform. (Tr. 31-32). Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step Five, the ALJ found that Plaintiff was forty-six (46) years old on the alleged disability onset date, which is defined as a younger individual. (Tr. 31); *see also* 20 C.F.R. § 404.1563(c). The ALJ also found that Plaintiff has a limited education and is able to communicate in English. (Tr. 31). Relying on the testimony of a VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 31-32). Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of her decision. (Tr. 31-32).

**C.   Analysis**

Plaintiff argues that the ALJ committed four errors. First, she argues that the ALJ

erred by failing to explain how she arrived at Plaintiff's RFC determination for her mental and nervous impairments, and by giving incorrect weight to certain medical sources. Second, that the ALJ erred by not finding Plaintiff's lower back and leg impairments to be severe. Third, that the ALJ erred in assessing the pain, subjective complaints, and credibility of Plaintiff, and also erred in failing to note that Plaintiff lacked medical insurance. Fourth and finally, Plaintiff alleges that the ALJ erred by relying on improper hypothetical questions presented to the VE. Each argument will be addressed in turn.

### 1. *The ALJ adequately explained how she reached her RFC determination, and properly explained why she discounted certain medical opinions.*

Plaintiff argues that the ALJ erred by failing to adequately explain both the RFC determination and why certain medical opinions were discounted. However, both of the ALJ's decisions were supported by substantial evidence and will not be disturbed.

Plaintiff argues that the ALJ erred by failing to find her disabled since substantial evidence supports her disability. Of course, it does not matter if the substantial evidence does support her disability, so long as it also supports her not being disabled. *Her*, 203 F.3d at 389-90 (holding that "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the decision reached") (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also Listenbee*, 846 F.2d at 349. As a result, it does not matter if Plaintiff, or even this Court, believes substantial evidence supports a different disability determination. All that is required of the ALJ is that her decision be supported by substantial evidence. The ALJ has done so here.

At Step Four of the analysis, the ALJ carefully reviewed the record and found that Plaintiff was capable of doing light work with the limitations specified. (Tr. 24). The ALJ carefully went through each of Plaintiff's impairments and described why they were not disabling. (Tr. 24-30). She noted the lack of objective medical evidence, and properly discounted subjective symptoms as lacking credibility. Moreover, the ALJ properly focused on Plaintiff's reports of daily activities, which included personal care, caring for her grandson, preparing daily meals, shopping, and other daily household chores. Accordingly, the substantial evidence here supports the ALJ's determination that Plaintiff was not disabled.

The ALJ also properly discounted the opinion evidence of Drs. Hoblitzell, Van Meter, and Smith. Ordinarily, a treating physician's opinion is given controlling weight if it is well-supported and not contradicted by other evidence. 20 C.F.R. § 404.1527(c)(2). But, the ALJ is not bound by a treating physician's opinion that is inconsistent with the substantial evidence in a case. *See* 20 C.F.R. § 404.1527(c)(2)-(6); *see also Cutlip*, 25 F.3d at 287 (holding that the Commissioner "is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary"); *accord Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (holding that the ALJ is not bound by "conclusory statements of doctors, especially where they are unsupported by detailed objective criteria and documentation"); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). To discount a treating physician's opinion, the ALJ must give "good reasons" for doing so. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013) (holding that the Commissioner must provide "good reasons" when it gives little weight to a treating physician's opinion) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th

Cir. 2011).

The ALJ provided good reasons each time she discounted opinion evidence. Dr. Hoblitzell's opinion was properly discounted because it was rendered some ten (10) years prior to Plaintiff's disability application, and thus, provided little insight about Plaintiff's current health. (Tr. 29). Dr. Van Meter's opinion was properly discounted because the ALJ found it to be internally inconsistent and inconsistent with the record as a whole. (Tr. 29).

The ALJ also adequately explained why she only gave "some weight" to the opinion of Dr. Smith. Dr. Smith found that Plaintiff had depression, personality disorder, and borderline intellectual functioning. Dr. Smith also found Plaintiff to have a Global Assessment of Function score of 25. (Tr. 29-30, 528); *see also* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 1994). However, Dr. Smith cites no diagnostic testing to support the findings of depression, personality, disorder, and borderline intellectual functioning. Moreover, the GAF score of 25 – which is remarkably low for someone who can perform the daily tasks that Plaintiff testified she performs – appears to be an aberration from the record as a whole.[1] Accordingly, the ALJ properly afforded only some weight to Dr. Smith's opinion. (Tr. 30).

### 2. *The ALJ did not err determining which of Plaintiff's impairments were severe.*

The second step in the disability evaluation process requires the ALJ to consider the

---

1) A GAF score of 25 indicates an individual whose behavior is "considerably influenced by delusions or hallucinations" or who has an "inability to function in almost all areas." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 1994). Such a person may have suicidal preoccupation or stay in bed all day with no home or friends. *Id.* As the ALJ noted, the record in no way supports a score this low, and the finding also was made during an exacerbation of Plaintiff's symptoms, further limiting its value to the disability determination. (Tr. 30, 520).

medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec. Ruling 96-3P, 1996 WL 374181, at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities." 20 C.F.R. § 404.1521(b). Basic work activities, defined as those "abilities and aptitudes necessary to do most jobs," include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* The claimant's impairments must have lasted or be expected to last for a continuous twelve (12) month period, unless the condition is expected to result in death. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1509.

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x. 425, 428 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the Step-Two screening process. 20 C.F.R. § 404.1520(a)(4).

Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). For this reason, courts have consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with the analysis. *Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McGlothin v. Comm'r,* 299 F. App'x. 516, 522 (6th Cir. 2008) (finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

At Step Two, the ALJ concluded that Plaintiff suffered from the following severe impairments: (1) major depression with psychosis; (2) personality disorder; (3) borderline intellectual functioning; and (4) tobacco-abuse disorder resulting in COPD. (Tr. 19). Having found that Plaintiff suffered from multiple severe impairments, the ALJ proceeded with the disability determination analysis.

Assuming *arguendo* that Plaintiff's other impairments should have been considered severe, the error was harmless because the ALJ found that Plaintiff had other severe impairments and completed the disability determination analysis. In accordance with the

Regulations, the ALJ considered both severe and non-severe impairments, including evidence of the above-mentioned non-severe impairments, at subsequent steps in the analysis. (Tr. 19-30). Therefore, the ALJ committed no reversible error. *See Maziarz,* 837 F.2d at 244.

### 3. *The ALJ assessed Plaintiff's subjective symptoms and properly assessed her credibility relating thereto.*

The Sixth Circuit has recognized that the cause of a disability may not be the underlying condition itself, "but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). In such situations, the ALJ must perform a two-step analysis to evaluate complaints of disabling pain. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x. 852, 862 (6th Cir. 2011) (citing 20 C.F.R. § 416.929(a); *Rogers*, 486 F.3d at 247). First, the ALJ must determine "whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the alleged symptoms." *Id.* at 862-63. If the ALJ finds that such impairment exists, the ALJ must then consider the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to perform basic work activities. *Id.* at 863. When evaluating the claimant's symptoms, the ALJ should consider the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relive symptoms; other measures taken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2-3 (July 2, 1996).

When the claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including lab findings, information from treating physicians, Plaintiff's complaints of symptoms and other relevant evidence. *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4). After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. "Blanket assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

As noted in the prior section of the Court's analysis, the ALJ found that Plaintiff manages many activities associated with daily living, such as personal grooming, caring for her grandson, shopping, preparing meals, and completing other household chores and errands. (Tr. 28). The ALJ determined that the ability to perform these daily activities did not comport with Plaintiff's allegations. (Tr. 28). Therefore, the ALJ concluded that Plaintiff's statements regarding the intensity, frequency, and limiting effects of her symptoms were not entirely credible.

To the extent that Plaintiff complains of the ALJ's alleged failure to consider her lack of medical insurance, she is mistaken. Plaintiff overlooks the fact that the ALJ *did* consider her lack of insurance coverage, among a host of other factors, in making her credibility

11

determination. Failure to seek proper treatment is an appropriate consideration for the ALJ in making her credibility determination, as is whether Plaintiff's ability to pay influenced such failure. *See* 20 C.F.R. § 404.1529(c)(v); *see also* Soc. Sec. Ruling 96-7p,1996 WL 374186. Here, the ALJ considered the Plaintiff's lack of medical insurance, but determined that her failure to seek treatment was based on more than an inability to pay because of a lack of medical coverage. (Tr. 27-28). Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 4. *The ALJ did not err in her hypothetical questions to the VE.*

First, it should be noted that the Court finds no error in the ALJ's assessment that Plaintiff is capable of performing past relevant work. Ordinarily, such a finding ends the ALJ's analysis. Here, however, the ALJ held in the alternative that there were a sufficient number of jobs in the regional and national economy that Plaintiff could perform notwithstanding her impairments. Out of an abundance of caution, the Court will review the ALJ's determination and method for reaching that conclusion.

Plaintiff alleges, specifically, that the ALJ erred in posing hypothetical questions to the VE. In posing a hypothetical question to a VE, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). However, the ALJ need only incorporate those limitations she finds to be credible. *Casey*, 987 F.2d at 1235.

Here, the ALJ properly excluded certain limitations that she found unsupported – namely, those limitations suggested by Dr. Smith, which, as the Court explained above, were not supported by the evidence in this case. Moreover, the ALJ properly included

those limitations that she did find credible, and committed no error in posing hypothetical questions to the VE. (Tr. 31-32).

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**;

4. A Judgment affirming this matter will be entered contemporaneously herewith. This 24th day of March, 2016.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Covington\14-197 Lockard MOO.wpd